**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

LEA MCDANIEL                                                                    PLAINTIFF

v.                                    **Case No. 4:19-cv-00886**

ALEX AZAR, Secretary of Department                                   DEFENDANT
of Health and Human Services, in his
official capacity

## OPINION AND ORDER

Before the Court is a motion for summary judgment filed by defendant Alex Azar in his

official capacity as Secretary of the Department of Health and Human Services ("HHS") (Dkt. No.

5). Plaintiff Lea McDaniel has filed a response in opposition (Dkt. No. 10). Secretary Azar filed

a reply (Dkt. No. 16). For the following reasons, the Court grants Secretary Azar's motion for

summary judgment (Dkt. No. 5).

### I.      Background

Since approximately 1993 or 1994, Ms. McDaniel has been employed by the United States

Food and Drug Administration ("FDA"), National Center for Toxicological Research ("NCTR"),

in Jefferson, Arkansas (Dkt. No. 7, at 1, 3). The FDA is a component of HHS (*Id.*). The mission

of NCTR is to conduct scientific research to generate data for FDA decision making and to develop

innovative tools and methods for the FDA to use in protecting public health (Dkt. Nos. 7, at 1; 7-

1). Under NCTR's Office of Research, there are six research divisions, including the Division of

Genetic and Molecular Toxicology ("DGMT") (Dkt. Nos. 7, at 1; 7-2). Ms. McDaniel transferred

to DGMT in 2007; at that time, her position was Biologist, General Schedule (GS), occupational

series 0401, grade 12 (Dkt. Nos. 7, at 1; 7-3). Ms. McDaniel has a Bachelor of Arts degree, with

a major in psychology (Dkt. No. 7, at 3).  While employed at NCTR, Ms. McDaniel earned a Master of Science in Regulatory Science in 2016 (*Id.*).

In May 2011, NCTR announced a detail to perform budget analyst and related administrative duties in DGMT (Dkt. Nos. 7, at 1; 7-4).  Ms. McDaniel applied for the detail and was selected (Dkt. No. 7, at 1).  Initially, the detail was to be limited to 120 days, but she continued to perform these duties on a permanent basis (*Id.*).  Her official position of Biologist, GS-12, was not changed (*Id.*).  Robert H. Heflich, Ph.D., became Director of DGMT in October 2013 (*Id.*, at 2).  Since October 2013, Dr. Heflich has been Ms. McDaniel's first-level supervisor (*Id.*).

The grade of GS-13 is the highest scientist position without a Ph.D. typically available at NCTR (*Id.*).  In the past 20 years, there have been only two such GS-13 positions in DGMT (*Id.*).  In 2016, the incumbent in one of the two GS-13 positions indicated his intention to retire (*Id.*).  Dr. Heflich, in July 2016, prepared a justification for two GS-13 positions, Interdisciplinary Scientist and Senior Regulatory Scientist Project Manager (*Id.*).  The GS-13 Interdisciplinary Scientist position is a laboratory scientist position (*Id.*).  The proposed GS-13 Regulatory Scientist position involves significant administrative duties, including determination of the annual budget, personnel, and instrument requirements for all division projects (*Id.*).  Dr. Heflich also prepared a position description[1] for each proposed GS-13 position (*Id.*).  Initially, the NCTR Deputy Director agreed to both positions (Dkt. Nos. 7, at 2; 7-5, at 2).

Management officials Winona Cason, Executive Officer, Office of Management, and Moses "Robby" Robinson, Human Capital Director, Office of Management, recommended that the proposed Regulatory Scientist GS-13 position not be approved (Dkt. No. 7, at 2).  They advised

---

[1]   In the record evidence and filings before the Court, the parties sometimes refer to a position description as a "PD."  (Dkt. No. 2, at 2).

that a GS-13 Regulatory Scientist position in DGMT would not be consistent with the other divisions since the only division that has a grade GS-13 Budget Analyst is the Division of Systems Biology, which is regarded as an anomaly (*Id.*).  The occupant of the GS-13 Budget Analyst position in the Systems Biology Division transferred from the Office of Management as a GS-13, and the other divisions had grade GS-12 Budget Analysts (*Id.*).  There are no GS-13 Regulatory Scientist positions at NCTR (*Id.*).  The Office of Research has a GS-14 Regulatory Scientist and a Senior Regulatory Science Manager, and the Office of Scientific Coordination has a Senior Regulatory Science Manager (Dkt. Nos. 7, at 2-3; 7-6, ¶ 9).  Mr. Robinson opposed the GS-13 Regulatory Scientist position on the basis that it would be an inappropriate combination of administrative and scientific duties (Dkt. Nos. 7, at 3; 7-7, ¶ 9).

In December 2016, a Vacancy Announcement was issued for the GS-13 Interdisciplinary Scientist position[2] in DGMT (Dkt. Nos. 7, at 3; 7-9; 7-10).  Dr. Heflich was the selecting official, and Dr. Heflich selected DGMT Biologist Ying Chen, an Asian female, for the position, effective January 8, 2017 (Dkt. Nos. 7, at 3; 7-11).  Ms. McDaniel contacted an Equal Employment Opportunity Commission ("EEOC") Counselor on January 5, 2017 (Dkt. No. 7, at 4).  Ms. McDaniel complained that she was not selected for the GS-13 Interdisciplinary Scientist position because of her race white, national origin American, and sex female (*Id.*).  This complaint represented Ms. McDaniel's first EEOC complaint of discrimination (Dkt. Nos. 7, at 4; 7-14).  A March 20, 2017, mediation regarding this complaint with Ms. McDaniel, Dr. Heflich, and a mediator proved unsuccessful (Dkt. Nos. 7, at 4; 7-15).  On April 7, 2017, Ms. McDaniel sent an email to the EEOC Counselor advising the Counselor of the three issues which Ms. McDaniel

---

[2] Ms. McDaniel, in her filings, refers to this same position as the GS-13 Biologist position (Dkt. No. 11, at 1).  The Court uses the phrases interchangeably to refer to the same open position.

would include in a formal complaint (Dkt. Nos. 7, at 4; 7-16).  On April 17, 2017, Ms. McDaniel

filed a formal EEOC complaint raising three issues:  (1) non-selection for a GS-13 Interdisciplinary

Scientist Position, (2) management did not announce a previously approved GS-13 Regulatory

Scientist position, and (3) since complaining to an EEOC Counselor and participating in mediation,

Ms. Cason had been "pressuring" her to pick a position description, either Biologist or Budget

Analyst (Dkt. Nos. 7, at 4; 7-17).  The FDA accepted Ms. McDaniel's complaint for investigation

(Dkt. Nos. 7, at 4; 7-18).  The notice of acceptance states that Ms. McDaniel alleges that two GS-

13 Regulatory Scientist positions previously approved for NCTR-DGMT were cancelled, though

Secretary Azar asserts that this notice of acceptance is incorrect (Dkt. No. 7, at 4).  Secretary Azar

asserts that Ms. McDaniel alleges that one GS-13 Regulatory Scientist position in NCTR-DGMT

was previously approved but not announced (Dkt. Nos. 7, at 4; 7-17).

Following an investigation of her EEOC complaint and a Report of Investigation, Ms.

McDaniel's complaint was referred to Administrative Judge Joseph M. Crout at the EEOC (Dkt.

Nos. 1, at 5; 7, at 4). Administrative Judge Crout granted HHS's motion for summary judgment

and entered judgment in its favor on May 1, 2019 (Dkt. No. 7, at 4).  On June 10, 2019, HHS

adopted Administrative Judge Crout's judgment as the agency's final agency decision ("FAD")

(*Id.*, at 4-5). Ms. McDaniel appealed to the EEOC, and she filed her complaint herein on December

11, 2019 (*Id.*, at 5).  While Ms. McDaniel's EEOC complaint was pending before Administrative

Judge Crout, NCTR established a position description for the position of Management Analyst,

GS-12 in DGMT on March 19, 2019 (Dkt. Nos. 7, at 5; 7-19).  Ms. McDaniel was selected for that

position, effective July 7, 2019 (Dkt. Nos. 7, at 5; 7-20).

Based on the above facts, Ms. McDaniel asserts that Secretary Azar discriminated against

her in violation of 42 U.S.C. § 2000d-7, *et seq.*, and Title VII of the Civil Rights Act of 1964 as

amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") (Dkt. No. 1, ¶ 1).  Ms. McDaniel asserts that she was subjected to non-sexual harassment, a hostile work environment, and disparate treatment on the bases of her race, color, national origin, sex, and reprisal (*Id.*, ¶¶ 1, 15-23).  Ms. McDaniel requests a bench trial; declaratory relief; injunctive relief; civil penalties; compensatory damages; restoration of civil service retirement; back pay; restoration of leave; post promotion; attorneys' fees and costs; and all other just and proper relief (*Id.*, at 3-4).

## II.      Legal Standard

Summary judgment is appropriate if there is no genuine issue of material fact for trial. *UnitedHealth Group Incorporated v. Executive Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Fed. R. Civ. P. 56).  Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "In ruling on a motion for summary judgment '[t]he district court must base the determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial.'"  *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923-24 (8th Cir. 2004) (internal citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Johnson Reg'l Med. Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) (citation omitted).

However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008), *cert. denied*, 522 U.S. 1048 (1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

Importantly, "[t]here is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (citing *Fercello v. County of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010)). "Although employment discrimination cases are 'often fact intensive and dependent on nuance in the workplace, they are not immune from summary judgment.'" *Trierweiler v. Wells Fargo Bank*, 639 F.3d 456, 459 (8th Cir. 2011) (quoting *Fercello*, 612 F.3d at 1077).

## III.   Discussion

Secretary Azar asserts that management had valid, non-discriminatory reasons for not selecting Ms. McDaniel for the GS-13 Interdisciplinary Scientist position (Dkt. No. 6, at 3-7). Secretary Azar argues that Ms. McDaniel cannot show that HHS discriminated against her by canceling a job announcement for a GS-13 Regulatory Scientist position (*Id.*, at 7-8). Secretary Azar argues that Ms. McDaniel cannot establish a *prima facie* retaliation claim and that, even if she could, HHS had legitimate reasons for the alleged retaliatory actions (*Id.*, at 8-10). Finally,

Secretary Azar maintains that Ms. McDaniel cannot establish a hostile work environment claim (*Id.*, at 10-14).

Ms. McDaniel opposes these arguments (Dkt. No. 11).  Ms. McDaniel claims that Dr. Heflich selected Ms. Chen for the GS-13 Interdisciplinary Scientist position without looking at anyone's application package and asserts that Dr. Heflich has had three additional discrimination cases against him "due to Asian female preference" (*Id.*, at 1-2).  Ms. McDaniel claims that deliberate delays in announcing the GS-13 Interdisciplinary Scientist position and refusing to announce altogether the GS-13 Regulatory Scientist position occurred because Ms. McDaniel is a white female (*Id.*, at 3).  Ms. McDaniel asserts that management's "willing[ness] to extend and pay another GS-12 [employee] to do what [Ms. McDaniel] does rather than promote [Ms. McDaniel] while promoting Asian females married to senior researchers[] is a blatant example of [management's] absolute discrimination towards" Ms. McDaniel (*Id.*).  Ms. McDaniel alleges that Ms. Cason has been pressuring her to pick a position description since she filed her EEOC complaint and went through mediation, and Ms. McDaniel claims that this pressure amounts to harassment and retaliation for filing her original complaint (*Id.*, at 2-3).

Because Ms. McDaniel alleges discrimination, retaliation, and hostile work environment, the Court examines Ms. McDaniel's claims in turn.

### A.      Discrimination

Ms. McDaniel alleges that she has suffered disparate treatment on the bases of her race, color, national origin, and sex (Dkt. No. 1, ¶ 1).  The Court understands Ms. McDaniel to make two discrimination claims:  (1) non-selection for the GS-13 Interdisciplinary Scientist position and (2) non-announcement of the GS-13 Regulatory Scientist position (Dkt. No. 11, at 1-2).  The Court will address each of these claims in turn.

### 1.    Legal Standard

A plaintiff may defeat a motion for summary judgment in a Title VII case either by producing direct evidence of discrimination or by showing an inference of discrimination under the burden-shifting framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-05 (1973).  *See Floyd-Gimon v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009); *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004).  Ms. McDaniel argues that the *McDonnell Douglas* framework applies to her claims (Dkt. No. 11, at 5-6).  Under the *McDonnell Douglas* framework, Ms. McDaniel must establish a *prima facie* case of discrimination, showing that:  (1) she was a member of a protected class; (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently.  *See Humphries v. Pulaski County Sch. Dist.*, 580 F.3d 688, 692 (8th Cir. 2009) (citing *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008)); *Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005) (citing *Tolen v. Ashcroft,* 377 F.3d 879, 882 (8th Cir. 2004)).  If Ms. McDaniel "meets her burden to establish a prima facie case of discrimination, the burden then shifts to the [defendant] 'to establish a legitimate, nondiscriminatory reason for taking the allegedly discriminatory action.'"  *Humphries*, 580 F.3d at 692-93 (quoting *Hammer v. Ashcroft,* 383 F.3d 722, 724 (8th Cir. 2004)).  If Secretary Azar puts forth such a reason, Ms. McDaniel must then show that Secretary Azar's proffered explanation is pretextual or her claims will fail.  *See id.* (citing *Hammer*, 383 F.3d at 724).

Proof of pretext requires more substantial evidence than a *prima facie* case because evidence of pretext is viewed in the light of the employer's justification.  *See Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 881 (8th Cir. 2005).  "There are at least two ways a plaintiff may

demonstrate a material question of fact regarding pretext." *Torgerson*, 643 F.3d at 1047 (citing *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1120 (8th Cir. 2006)). "A plaintiff may show that the employer's explanation is 'unworthy of credence . . . because it has no basis in fact.'" *Id.* (quoting *Wallace*, 442 F.3d at 1120). "Alternatively, a plaintiff may show pretext 'by persuading the court that a [prohibited] reason more likely motivated the employer.'" *Id.* (quoting *Wallace*, 442 F.3d at 1120). "Either route amounts to showing that a prohibited reason, rather than the employer's stated reason, actually motivated the employer's action." *Id.* (citing *Wallace*, 442 F.3d at 1120). "Where . . . the employer contends that the selected candidate was more qualified for the position than the plaintiff, a comparative analysis of the qualifications is relevant to determine whether there is reason to disbelieve the employer's proffered reason for its employment decision." *Chock v. Nw. Airlines, Inc.*, 113 F.3d 861, 864 (8th Cir. 1997). "Similar qualifications" between the plaintiff and the selectee do not "raise an inference of discrimination." *Id.* "'[T]o support a finding of pretext, [the applicant] must show that the [defendant] hired a *less* qualified applicant.'" *Torgerson*, 643 F.3d at 1049 (emphasis in original) (quoting *Kincaid v. City of Omaha*, 378 F.3d 799, 805 (8th Cir. 2004)).

### 2.   Non-Selection For The GS-13 Interdisciplinary Scientist Position

For purposes of this motion, Secretary Azar assumes that Ms. McDaniel can establish a *prima facie* case of discrimination on her non-selection claim (Dkt. No. 6, at 5). Thus, the burden of production shifts to Secretary Azar to articulate a non-discriminatory reason for not selecting Ms. McDaniel for the GS-13 Interdisciplinary Scientist position in DGMT. Secretary Azar states that Dr. Heflich selected Ms. Chen, an Asian female, because she had the qualifications he was looking for and he considered her to be better qualified than Ms. McDaniel (*Id.*). In his declaration, Dr. Heflich states that Ms. Chen is a very competent research scientist with about 30 years of

experience in molecular genetic analysis and molecular biology techniques, including experience with next-generation sequencing, a complex technology that is becoming increasingly important for the work of DGMT (Dkt. No. 7-5, at 3). Dr. Heflich states that Ms. Chen's qualifications for the position were superior to that of Ms. McDaniel's (*Id.*). Additionally, Dr. Heflich avers that from 2011 to 2016—the five years preceding Dr. Heflich's selection of Ms. Chen—Ms. McDaniel worked very little, if at all, as a laboratory scientist, instead working mostly with data mining and database construction performed at her desk (*Id.*). In his EEOC affidavit, Dr. Heflich states that Ms. McDaniel "was not in the top tier of applicants" for the position (Dkt. No. 12-3, at 4). In short, Dr. Heflich states that Ms. Chen had the experience and skills necessary for the GS-13 Interdisciplinary Scientist position and that Ms. McDaniel did not (Dkt. No. 7-5, at 3). Based on this record evidence, no reasonable juror could conclude that Secretary Azar has failed "'to establish a legitimate, nondiscriminatory reason for taking the allegedly discriminatory action.'" *Humphries*, 580 F.3d at 692-93 (quoting *Hammer,* 383 F.3d at 724).

Accordingly, the burden shifts back to Ms. McDaniel to show that Secretary Azar's proffered explanation is pretextual. *See id.* (citing *Hammer*, 383 F.3d at 724). Ms. McDaniel makes several arguments the Court interprets as attempts to show that the proffered explanation is pretextual. Ms. McDaniel argues that a material question of fact exists regarding Ms. Chen's answer to two qualifying questions for the GS-13 Interdisciplinary Scientist position: Question 12, which asked whether the applicant "[a]ssists in the determination of the annual budget, personnel[,] and instrumentation requirements for all projects," and Question 18, which asked whether the applicant "[a]ssists in the preparation of budgetary reports, to determine the need for resources, such as supplies, equipment[,] and personnel required to meet the needs of the organization" (Dkt. No. 12, at 1). Ms. McDaniel notes that Ms. Chen testified in her deposition

that she does not have experience in tracking division budgets, so Ms. McDaniel argues that Ms. Chen's responses to those two questions will demonstrate either that "she was less than truthful on the application" or that "the application itself demonstrated she was not fit for the position" (Dkt. Nos. 12, at 1-2; 12-1, at 2).  Additionally, Ms. McDaniel argues that next-generation sequencing should not have been a factor in the selection for the position because that skill was not listed in the job announcement as being required and that, assuming next-generation sequencing was a valid skill to consider, Dr. Heflich failed to consult any next-generation sequencing experts when he selected based on in part on this criteria (Dkt. Nos. 7-5, at 22-29; 12, at 2).

Ms. McDaniel argues that the qualifications Dr. Heflich points out as the basis for selecting Ms. Chen are due to nepotism since Ms. Chen has worked for her husband, Dr. Tao Chen, during much of her time at NCTR (Dkt. No. 12, at 2-3).  Ms. McDaniel claims that Ms. Chen received preferential treatment from this arrangement and then received an additional promotion as a result of this favorable treatment (*Id.*, at 3).  Ms. McDaniel cites no legal authority to support her assertion that nepotism by virtue of marriage should factor into this Court's discrimination analysis.

Ms. McDaniel also alleges that Dr. Heflich did not look at anyone's application package in hiring for the GS-13 Interdisciplinary Scientist position and just received a selection form from Human Resources with Ms. Ying's name on it to sign but cites no record evidence to support her claim (Dkt. No. 11, at 1).  In addition, Ms. McDaniel asserts that Dr. Heflich has had three additional discrimination cases against him "due to Asian female preference" but cites no record evidence to support her claim (*Id.*, at 2).

Viewing the record evidence in the light most favorable to Ms. McDaniel, the Court finds that no reasonable juror could conclude on the record evidence before the Court, even construing

all reasonable inferences in favor of Ms. McDaniel, that Ms. McDaniel has met her burden to show that Secretary Azar's proffered explanation is pretextual. In particular, Ms. McDaniel does not show that Ms. Chen was a "*less* qualified applicant." *Torgerson*, 643 F.3d at 1049. The Court has reviewed the *curriculum vitae* for Ms. McDaniel and Ms. Chen, and "a comparative analysis of the qualifications" of both Ms. McDaniel and Ms. Chen shows that Ms. Chen was at least as qualified as Ms. McDaniel (Dkt. Nos. 7-12; 7-13). *See Chock*, 113 F.3d at 864. Both Ms. McDaniel and Ms. Chen were GS-12 Biologists in DGMT (*Id.*). Ms. McDaniel has a Bachelor of Arts with a major in Psychology, and Ms. McDaniel earned a Master of Regulatory Science degree in 2016 while employed at NCTR (Dkt. No. 7-12, at 1-2). Ms. Chen has a Bachelor of Science with a major in Biology and a Master of Science in Cell and Molecular Biology (Dkt. No. 7-13, at 1). Ms. Chen worked as an Instructor and an Associate Professor at the University of Science & Technology of China from 1985 to 1993 (*Id.*). From 1993 to 2000, Ms. Chen worked as a Research Associate at several universities in the United States (*Id.*). From 2000 to September 2008, Ms. Chen worked as a Research Associate at the Arkansas Children's Nutrition Center and the Department of Physiology and Biophysics at the University of Arkansas for Medical Sciences (*Id.*). In that position, Ms. Chen worked as a senior technician in molecular biology (Dkt. No. 7, at 3-4). Ms. Chen was hired by NCTR-DGMT as a Biologist, GS-12, in September 2008 (Dkt. Nos. 7, at 4; 7-13, at 1). At the time the GS-13 Interdisciplinary Scientist position was announced, Ms. Chen's accomplishments at NCTR included: establishment of a molecular biological laboratory; development of microarray and PCR technologies for analysis of gene expression and microRNA expression; performing DNA sequencing analysis for various types of mutations; developing a cytokine-related inflammatory assay; and establishing next-generation sequencing technology for analysis of mutations (Dkt. Nos. 6, at 5-6; 7-13, at 11-12).

12

Given Ms. Chen's qualifications for the GS-13 Interdisciplinary Scientist position, the Court finds that no reasonable juror could conclude that Ms. McDaniel has met her burden to show that Secretary Azar's proffered explanation for hiring Ms. Chen based on her qualifications for the position is pretext.  Accordingly, the Court grants summary judgment in Secretary Azar's favor on Ms. McDaniel's non-selection Title VII claims (Dkt. No. 5).

### 3.      Non-Announcement Of The GS-13 Regulatory Scientist Position

Ms. McDaniel also alleges that she was discriminated against by management choosing not to announce or hire a GS-13 Regulatory Scientist position (Dkt. No. 11, at 2).  Ms. McDaniel alleges that Mr. Robinson and Ms. Cason said DGMT could not have the GS-13 Regulatory Scientist position because it would set a precedent and because they did not want to promote Ms. McDaniel to GS-13 (*Id.*).  Ms. McDaniel claims that Dr. Heflich told her things like, "they just don't want to promote you," and, "they don't like you" (*Id.*).  Ms. McDaniel claims that the GS-13 Regulatory Scientist position would have made her job functions and position description match (*Id.*).  Ms. McDaniel alleges that this position was not announced because she is a white female (*Id.*, at 3).

Secretary Azar asserts that Ms. McDaniel cannot establish a *prima facie* case of discrimination based on the agency's decision not to announce the GS-13 Regulatory Scientist position (Dkt. No. 6, at 7).  Secretary Azar states that cancellation of this position, which had been proposed by Dr. Heflich, was not discriminatory against Ms. McDaniel (*Id.*).  Additionally, Secretary Azar argues that since the decision not to announce this position affected all potential applicants, regardless of race, color, national origin, and sex, this decision not to announce the GS-13 Regulatory Scientist position did not violate Title VII (*Id.*).

The Court agrees with Secretary Azar that Ms. McDaniel fails to establish a *prima facie* case of discrimination based on the agency's decision not to announce the GS-13 Regulatory Scientist position. Ms. McDaniel does not establish that she suffered an adverse employment action or that similarly situated employees outside her protected class were treated differently. *See Humphries*, 580 F.3d at 692 (citing *Fields*, 520 F.3d at 864). The Court is not convinced that the agency's decision not to announce the GS-13 Regulatory Scientist position constitutes an adverse employment action under controlling law. However, assuming that such a decision does constitute an adverse employment action, Ms. McDaniel cannot show that similarly situated employees outside her protected class were treated differently since all potential applicants would have been similarly affected by this non-announcement.

The Court finds that no reasonable juror on the record evidence before the Court, even construing all reasonable inferences in favor of Ms. McDaniel, could conclude that Ms. McDaniel has established a *prima facie* case of discrimination based on the agency's decision not to announce the GS-13 Regulatory Scientist position. Accordingly, the Court grants summary judgment in Secretary Azar's favor on Ms. McDaniel's non-announcement Title VII claims (Dkt. No. 5).

### B. Retaliation

Ms. McDaniel alleges that she complained about disparate treatment and was further punished for it (Dkt. No. 1, ¶ 18). Ms. McDaniel claims that Ms. Cason has pressured her to pick a new position description—"either to be a Biologist and go to the lab 100% or be a Budge Analyst and stop doing the science"—since she filed her complaint and went through mediation (Dkt. No. 11, at 2). Ms. McDaniel states that Ms. Cason has not forced or pressured any other employees to pick a new position description (*Id.*, at 3). Ms. McDaniel alleges that Ms. Cason pressuring her to pick a position description is harassment and retaliation for filing her original complaint (*Id.*).

14

### 1.     Legal Standard

"Title VII forbids an employer from 'discriminat[ing] against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" *Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810, 818 (8th Cir. 2017) (quoting 42 U.S.C.§ 2000e-3(a)).  To establish a retaliation claim under Title VII, a plaintiff must first establish a *prima facie* case by showing that the plaintiff:  (1) engaged in statutorily protected activity; (2) suffered a materially adverse employment action; and (3) there was a causal connection between the adverse employment action and the protected activity.  *See Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 928 (8th Cir. 2007); *Higgins v. Gonazales*, 481 F.3d 578, 589 (8th Cir. 2007); *Robinson v. Potter*, 453 F.3d 990, 994 (8th Cir. 2006).  To be "materially adverse," the alleged retaliatory action must produce some harm or injury; "[p]etty slights or minor annoyances" are not materially adverse retaliatory actions.  *Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 339 (2013).  "Even at summary judgment, '[a] plaintiff can establish a causal connection between his complaints and an adverse action through circumstantial evidence, such as the timing of the two events.'"  *Wilson v. Ark. Dep't of Human Servs.*, 850 F.3d 368, 373 (8th Cir. 2017) (quoting *Turner v. Gonzales*, 421 F.3d 688, 696-97 (8th Cir. 2005)).  However, "[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation."  *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 761 (8th Cir. 2004) (quoting *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc)).

2.      **Analysis**

Secretary Azar asserts that Ms. McDaniel cannot establish a *prima facie* retaliation claim and that, even if she could, the agency had legitimate reasons for the alleged retaliatory actions (Dkt. No. 6, at 8-10).  Secretary Azar argues that Ms. McDaniel did not suffer a materially adverse employment action and cannot show a causal link between her protected activity and the alleged pressure (*Id.*, at 9-10).  The Court agrees with Secretary Azar.

As evidence of a materially adverse employment action, Ms. McDaniel offers nothing more than that the alleged pressure to select a position description began after the mediation of her informal EEOC complaint (Dkt. Nos. 6, at 9-10; 7-17).  The Court determines that this alleged pressure is insufficient to constitute a materially adverse employment action under controlling law (Dkt. No. 6, at 9-10).  Ms. Cason avers that she did not have any conversations or written communications directly with Ms. McDaniel during or after the mediation of her EEOC complaint about changing her position description (Dkt. No. 7-6, ¶ 11).  Ms. Cason states that she did not have a conversation directly with Ms. McDaniel concerning her position description or any aspect of her job and was not aware that she filed a formal complaint until June 16, 2017 (*Id.*, ¶ 13).  Ms. Cason states that her conversations were with Dr. Heflich and the EEOC Counselor (*Id.*).

Even if Ms. Cason had conversations or written communications directly with Ms. McDaniel concerning her position description, based on the record evidence, the Court finds that no reasonable juror could conclude that the alleged pressure to pick a position description constitutes a materially adverse employment action.  Further, even assuming that Ms. McDaniel could demonstrate a materially adverse employment action, retaliation for protected activity must be the "but for" cause of the alleged adverse employment action.  *See Blomker v. Jewell*, 831 F.3d 1051, 1059 (8th Cir. 2016).  Though a temporal connection exists between the alleged pressure

and Ms. McDaniel's protected activity, generally more than a temporal connection is required to show a causal link.  *See Peterson v. Scott County*, 406 F.3d 515, 524 (8th Cir. 2005); *Kipp v. Mo. Hwy & Trans. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002).  Ms. McDaniel's subjective belief that management's alleged pressure to select a position description was retaliatory is not sufficient.  *See Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1088 (8th Cir. 2011) ("A party's unsupported self-serving allegation that her employer's decision was based on retaliation does not establish a genuine issue of material fact." (internal quotations and citations omitted)).  Ms. McDaniel provides no other record evidence supporting her contentions.  Based on the record evidence, the Court finds that no reasonable juror could conclude that retaliation was the "but for" cause of the alleged pressure to pick a position description.

Accordingly, the Court grants summary judgment in Secretary Azar's favor on Ms. McDaniel's retaliation Title VII claims (Dkt. No. 5).

### C.      Hostile Work Environment

Ms. McDaniel alleges that she was "subjected to a hostile work environment including but not limited to belittling, being forced to perform jobs she was not designated to perform, being made to designate job duties when others were not, and generally being treated beyond the bounds of human decency" (Dkt. No. 1, ¶ 22).  Based on the Court's review, Ms. McDaniel's response, brief in support, and statement of facts do not mention this claim (Dkt. Nos. 10; 11; 12).  To the extent Ms. McDaniel intends to pursue this claim and since "[t]he movant has the burden of showing that there is no genuine issue of fact," the Court will analyze Ms. McDaniel's hostile work environment claim and draw "all justifiable inferences" in her favor.  *Anderson*, 477 U.S. at 255-56.

### 1.      Legal Standard

17

A work environment is "hostile" in violation of Title VII "'[w]hen the workplace is permeated with "discriminatory intimidation, ridicule, and insult," that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."'" *Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1038 (8th Cir. 2005) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank*, 477 U.S. 57, 65, 67 (1986))). Actionable harassment must have been both objectively and subjectively offensive affecting a term of employment. *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir. 2004). Ms. McDaniel must demonstrate that the work environment is one "that a reasonable person would find hostile or abusive, and one that the victim did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris*, 510 U.S. at 21-22). To establish a race-based hostile work environment claim alleging discriminatory conduct by a supervisor, "a plaintiff must show that (1) he or she is a member of a protected class; (2) he or she is subjected to unwelcome race-based harassment; (3) the harassment was because of membership in the protected class; and (4) the harassment affected a term, condition, or privilege of his or her employment." *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 892 (8th Cir. 2005)). If the claim is based on alleged conduct by a co-worker, not a supervisor, there is an added fifth element to establish a *prima facie* case, requiring proof that the employer knew or should have known of the harassment and failed to take appropriate remedial action. *Nichols v. Tri-National Logistics, Inc.*, 809 F.3d 981, 985 (8th Cir. 2016).

"In a hostile work environment claim, evidence concerning all circumstances of the complainant's employment must be considered, including the frequency of the offending conduct, its severity, whether it was physically threatening or humiliating, and whether it unreasonably

interfered with work performance." *Kimzey v. Wal-Mart Stores, Inc.*, 107 F.3d 568, 573 (8th Cir. 1997) (citations omitted); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 32 (1993) ("But we can say that whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances."). The Eighth Circuit has "repeatedly emphasized, however, that frequency is not the only factor [courts] examine—both in situations where [courts] have found the existence of a hostile work environment and where [courts] have not." *Watson v. CEVA Logistics, U.S., Inc.*, 619 F.3d 936, 942 (8th Cir. 2010) (citations omitted).

"This is a demanding standard—'conduct must be extreme to amount to a change in the terms and conditions of employment.'" *Abdel-Ghani v. Target Corp.*, 686 Fed. App'x 377, 379 (8th Cir. 2017) (quoting *Faragher*, 524 U.S. at 788). "Harassment which is severe and pervasive is deemed to affect a term, condition, or privilege of employment." *Stone v. McGraw Hill Fin., Inc.*, 856 F.3d 1168, 1175 (8th Cir. 2017) (quoting *Singletary*, 423 F.3d at 892). "[S]imple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Arraleh v. County of Ramsey*, 461 F.3d 967, 979 (8th Cir. 2006) (quoting *Al–Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1039 (8th Cir. 2005)). "'Mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment' to support a claim of hostile work environment." *Id.* (quoting *Elmahdi v. Marriott Hotel Servs., Inc.*, 339 F.3d 645, 653 (8th Cir. 2003)). "Certainly, 'not every prejudiced remark made at work supports an inference of illegal employment discrimination.'" *St. Martin v. City of St. Paul*, 680 F.3d 1027, 1035-36 (8th Cir. 2012) (quoting *Arraleh*, 461 F.3d at 975).

### 2.  Analysis

As an initial matter, Secretary Azar argues that Ms. McDaniel's hostile work environment claim appears to be based on the same actions that are the basis for her retaliation claim (Dkt. No. 6, at 10). In her formal EEOC complaint, Ms. McDaniel alleges, "I feel like Ms. Cason trying to force me to pick a PD is harassment and retaliation for filing my original [informal] complaint, because she is not trying to force any of these other people to pick or put them on a new PD." (Dkt. No. 7-17, at 6). "In the context of employment discrimination, the '[a]dministrative remedies are exhausted by the timely filing of a charge and the receipt of a right-to-sue letter.'" *Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 539 (8th Cir. 2020) (quoting *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002)). "Regarding a particular claim, the Eighth Circuit deem[s] administrative remedies exhausted as to all incidents of discrimination that are like or reasonably related to the allegations of the [administrative] charge." *Id.* (internal quotations and citations omitted). "Thus, the scope of a civil suit before a district court for retaliation under Title VII is limited to the claims properly brought before the appropriate administrative body." *Id.* To the extent Ms. McDaniel alleges Ms. Cason's actions also constituted a hostile work environment, the Court will consider them. To the extent that Ms. McDaniel's hostile work environment claim is based on different conduct, such claims are barred due to Ms. McDaniel's failure to exhaust administrative remedies.

As to Ms. McDaniel's allegations regarding Ms. Cason, the Court finds on the record evidence before the Court, construing all reasonable inferences in favor of Ms. McDaniel, that no reasonable juror could find in favor of Ms. McDaniel on a hostile work environment claim. Even assuming that Ms. McDaniel was pressured to pick a position description, the record evidence does not show that such pressure is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Al-Zubaidy*, 406 F.3d at 1038

(internal quotations and citations omitted).   Ms. McDaniel provides no record evidence demonstrating that this alleged harassment occurred because of her status in a protected class, and Ms. McDaniel provides no record evidence demonstrating that this alleged harassment altered a term, condition, or privilege of Ms. McDaniel's employment.

Accordingly, the Court grants summary judgment in Secretary Azar's favor on Ms. McDaniel's hostile work environment claims (Dkt. No. 5).

IV.    **Conclusion**

For the above reasons, the Court grants Secretary Azar's motion for summary judgment (Dkt. No. 5).  The Court denies Ms. McDaniel the relief she seeks, and her claims are dismissed with prejudice.  Judgment will be entered accordingly.

So ordered this 22nd day of March, 2021.

Kristine G. Baker
United States District Judge